**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**YVONNE L. PHILLIPS,**

                                    **Plaintiff,**                          **03-CV-0189Sr**

**v.**

**JO ANNE B. BARNHART, Commissioner,**
 **Social Security Administration,**

                                    **Defendant.**

_____

## DECISION AND ORDER

        In accordance with 28 U.S.C. § 636(c), the parties have consented to

have the undersigned conduct all further proceedings in this case, including entry of

final judgment.  Dkt. #11.


        Plaintiff commenced this action pursuant to 42 U.S.C. § 405(g), seeking

review of the final decision of the Commissioner of Social Security (the

("Commissioner"), denying her application for supplemental security income ("SSI").

Dkt. #1.  The Commissioner moved for judgment on the pleadings pursuant to

Fed.R.Civ.P. 12(c).  Dkt. #9.  For the following reasons, the Commissioner's motion is

denied and the matter is remanded for further administrative proceedings.


## PROCEDURAL BACKGROUND [1]

        The plaintiff, Yvonne L. Phillips, filed an application for SSI benefits on

September 13, 1999, but amended her claim to assert an alleged onset date of March

---

        [1] References to "T" are to the certified transcript of the administrative record filed by the defendant
in this action.  Dkt. #7.

22, 2000.  T39, 68.  Her application was denied initially and upon reconsideration.  T43,

49.  A hearing, as requested by the plaintiff, was conducted on September 20, 2000,

before Administrative Law Judge ("ALJ") Nancy Battaglia.  T19-40.  Plaintiff was

represented by an attorney from the Erie County Department of Social Services, who

argued that plaintiff qualified for benefits based upon listing 12.05C, which addresses

mental retardation.  T22.  By decision dated October 25, 2000, the ALJ determined that

plaintiff was not disabled without addressing 12.05C.  T12-18.  The ALJ's determination

became the final decision of the Commissioner on January 9, 2003, when the Appeals

Council denied plaintiff's appeal.  T4.  Plaintiff commenced this action on March 7,

2003, pursuant to 42 U.S.C. § 405(g).  Dkt. #1.


## FACTUAL BACKGROUND

Administrative Hearing

Yvonne Phillips was 49 years old at the time of her administrative hearing.

T21.  She testified that she attended both Catholic and public school in Brooklyn, New

York, but did not graduate from high school.  T22, 24.  Plaintiff explained that she

missed a lot of classes and was failing her classes because she was frustrated and

didn't like school.  T24.  She obtained her GED when she was approximately 30 years

old.  T23.  Plaintiff also completed approximately one year of data entry training.  T36.


Plaintiff complained of anxiety attacks, headaches, excruciating back

aches and fatigue from interferon treatment for her hepatitis C.  T26- 30.  She claimed

that she could walk about a mile, but couldn't bend over, lift anything or sit or stand in

-2-

one position for more than twenty minutes.  T31-33.  She testified that she cooked for

herself and did some cleaning, laundry and grocery shopping with some assistance

from her children and friend.  T34.  She utilizes public transportation independently, but

sometimes has difficulty lifting her foot onto the step of the bus.  T34.


       The ALJ asked the vocational expert to consider a younger individual with

a GED and no past relevant work experience who was limited to lifting 10 pounds

frequently and up to 50 pounds occasionally, with restrictions of occasional bending, no

dangerous moving machinery, flashing lights or unprotected heights who could follow

simple directions only and who could not perform detailed tasks and required routine

work in a calm environment.  T37.  The vocational expert opined that such an individual

could work as a laundry worker, which was classified as a medium exertion level

occupation with approximately 930 positions in Western New York.  T37.  When the

ALJ limited the ability of the individual to lift and carry to 20 pounds occasionally, the

vocational expert opined that such an individual could work as a housekeeper within the

hotel/motel industry, which was classified as a light exertion level occupation with

approximately 3,800 positions in Western New York.  T37.


Medical Evidence

       An MRI performed on July 20, 1999 indicated degenerative disc changes

at L4-L5 with left sided asymmetric disc bulge with mild stenosis of the central canal

and left neuroforamina and mild mass effect upon the dural sac, but no evidence of

nerve root impingement within the neuroforamina.  T190.  Dr. Jan Novak issued a

return to work slip releasing plaintiff to work without restrictions as of July 26, 1999.
T181.

Plaintiff's treating physician, Dr. B. Majeromi, completed an assessment
for the New York State Office of Temporary and Disability Assistance dated October 20,
1999, which noted plaintiff's diagnoses of seizure disorder with no recent seizures,
hypertension controlled with medication and asymptomatic hepatitis C.  T154-55.  Dr.
Majeromi also indicated that plaintiff had occasional back pain relieved by Motrin.
T155.  She noted normal range of motion in all joints and opined that plaintiff had "no
limitations except for heavy lifting ( >25 lb) due to back pain."  T156.

Dr. Majeromi also completed a mental evaluation of plaintiff, dated
October 29, 1999, in which she found plaintiff's attitude, appearance and behavior
unremarkable and her speech, thought and perception normal.  Although she found
plaintiff's mood to be sad, she noted that her affect was normal.  T165.  Dr. Majeromi
found no limitation of understanding and memory, sustained concentration and
persistence, social interaction, adaption, activities of daily living, ability to function in a
work setting, or ability to perform work-related mental activities.  T167-68.

Dr. Thomas Dickenson completed an intelligence evaluation of plaintiff on
behalf of the Commissioner on November 15, 1999.  Plaintiff informed Dr. Dickenson
that she "got as far as the 9th grade" in public school in New York City and earned her
equivalency diploma in Buffalo around 1983.  T197.  She reported working in a medical

office at Millard Fillmore Hospital and performing computer work at the Clarkson Center

until July of 1999, when she began to suffer back pain.  T197-98.  Plaintiff reported that

she could perform most home chores, including cooking, cleaning and laundry, and

indicated that she traveled independently by bus and was capable of reading her mail,

writing a letter, completing a job application and budgeting her money.  T198.  Plaintiff

completed the Wechsler Adult Intelligence Scale with the following results: Verbal IQ of

74, Performance IQ of 69 and Full Scale IQ of 69, placing her in the 2nd percentile for

her age group.  T198.  Dr. Dickenson found plaintiff's overall functioning to be in the

dull/normal range and opined that plaintiff would have difficulty with complex directions,

detailed tasks and flexible and distracting situations, but would be able to handle her

funds.  T198.


Plaintiff also underwent a physical evaluation at the request of the

Commissioner.  T200.  Dr. Kenneth C. Miller noted a past history of illegal IV drug use

and reports of epilepsy, back problems and hepatitis C.  T200.  Upon examination, Dr.

Miller noted that plaintiff exhibited normal gait, station and posture, an ability to heel-toe

walk with both feet, squat and get on and off the examination table with some difficulty.

T201.  He also noted that

> Gross and fine manipulation of the fingers and hands and
> dexterity are within normal limits.  Client can hold a large
> object, pick up and manipulate a coin, button a button and
> zip a zipper.  Some muscular spasm in the paralumbar
> vertebral muscles.  No rigidity or atrophy noted.  Bilateral
> straight leg raising test up to 15 degrees for the right with
> back pain increased with foot dorsiflexion and 35 degrees
> for the left with back pain increased with foot dorsiflexion.

T201.  Plaintiff's neurological exam revealed:

> Motor strength of the upper extremities to include handgrip
> up to scale 5.  Motor strength of the lower extremities up to
> scale 5.  Can make a full fist bilaterally.  There were no
> sensory deficits noted in the upper or lower extremities.
> DTR: physiologic and normal.  The client was not tremulous
> or sluggish in movement.

T201.   Dr. Miller also noted that plaintiff "was alert and responsive, though slow in answering but appropriately."  T201.  Dr. Miller opined that plaintiff "would be impaired from activities which involve heavy lifting or bending" and "would have to be in a safe environment, where, if she has a seizure she would not injure herself or others."  T201.

The Commissioner's reviewing physician, Dr. Jon S. Miller, completed a physical residual function capacity assessment noting the following exertional limitations: occasionally lifting and/or carrying a maximum of 50 pounds; frequently lifting and/or carrying a maximum of 25 pounds; standing and/or walking a total of six hours in an eight hour work day; sitting for a total of six hours in an eight hour work day; and unlimited pushing and or pulling.  T207.  In addition, it was noted that plaintiff should not work around machinery, heights or flashing lights.  T210.

A mental residual functional capacity assessment, completed by the Commissioner's reviewing physician, Alma Ramirez, concluded that plaintiff suffered from an organic mental disorder as evidenced by her dull/normal range intellectual function, but did not meet or equal listing 12.05 and was capable of performing simple repetitive work on a sustained basis.  T215-16, 227.  As a result of her disorder, Dr.

Ramirez opined that plaintiff would be moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public and set realistic goals or make plans independently of others.  T223-24.

An MRI on July 26, 2000 revealed narrowing of the L4-L5 intervertebral disc; a mild diffuse disc bulge at L3-L4 with no evidence of central spinal canal stenosis and a diffuse bulging disc at L4-L5 which was not significantly changed since the prior MRI.  T250.

On August 29, 2000, Dr. Majeromi completed a physical assessment of plaintiff's ability to do work-related activities, indicating that plaintiff could frequently lift a maximum of 10 pounds and occasionally lift a maximum of 50 pounds; that she could frequently carry a maximum of 20 pounds and occasionally carry a maximum of 50 pounds and that she was not limited in her ability to sit, stand or walk during an eight-hour day.  T243.

ALJ's Decision

The ALJ determined that plaintiff suffered from the following severe impairments: back problems; hepatitis C; seizure disorder; and dull/normal intellectual functioning.  T13.  However, the ALJ did not find that plaintiff's impairments were severe enough to meet or medically equal one of the impairments listed in 20 C.F.R. Pt. 404, Subpart P, Appendix 1.  T13.  In reliance upon the medical assessment provided

by plaintiff's treating physician, the ALJ determined that plaintiff retained the residual

functional capacity to lift up to 10 pounds frequently and up to 50 pounds occasionally

and to carry up to 20 pounds frequently and up to 50 pounds occasionally.  T15.  In

addition, the ALJ determined that plaintiff was required to avoid dangerous moving

machinery, flashing lights and unprotected heights as a seizure precaution; was limited

to occasional bending; and should be involved with work requiring only simple direction

with no detailed tasks, in a calm environment such as involved with routine work.  T15.

The ALJ found plaintiff's allegations of further limitations "lacking in credibility."  T15.

Based upon the testimony of the vocational expert, the ALJ concluded that plaintiff's

residual functional capacity did not preclude her from performing work that exists in

significant number in the national economy.  T16.

## DISCUSSION AND ANALYSIS

**I.    Scope of Judicial Review.**

       The Social Security Act states that, upon review of the Commissioner's

decision by the district court, "[t]he findings of the [Commissioner] as to any fact, if

supported by substantial evidence, shall be conclusive .  .  .."  42 U.S.C. § 405(g).

Substantial evidence is defined as evidence which a "reasonable mind might accept as

adequate to support a conclusion . . .."  *Consolidated Edison Co. v. NLRB,* 305 U.S.

197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tejada v.

Apfel,* 167 F.3d 770, 773-74 (2d Cir. 1999); *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir.

1999).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* nor substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401. The court's sole inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982). "Further, if supported by substantial evidence, the [Commissioner's] finding must be sustained, 'even where substantial evidence may support the plaintiff's position and despite that the Court's independent analysis of the evidence may differ from the [Commissioner's].'" *Martin v. Shalala,* No. 93-CV-898S, 1995 WL 222059, at *5 (W.D.N.Y. March 20, 1995), *citing Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

Before applying the substantial evidence test, the Court first "reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standard." *Tejada v. Apfel*, 167 F.3d at 773; *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). "Failure to apply the correct legal standards is grounds for reversal." *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984); *see Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983) (Commissioner's determination "cannot be upheld when based on an erroneous view of the law that improperly disregards highly probative evidence."). Where application of the correct legal standard could lead to only one conclusion, however, the Court need not remand. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998).

II.     **The Disability Standard**.

The standards set forth in the Social Security Act provide that a person

will be found to be disabled "if he is unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has

lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A).  The Act clarifies that "an individual shall be

determined to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but

cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy . . .." 42 U.S.C.

§ 1382c(a)(3)(B).


In assessing whether a claimant is suffering from a disability, the ALJ is

required to follow a five-step sequential evaluation process:

1.      The Commissioner considers whether the claimant is
        currently engaged in substantial gainful activity.

2.      If not, the Commissioner considers whether the
        claimant has a "severe impairment" which limits his or
        her mental or physical ability to do basic work
        activities.

3.      If the claimant has a "severe impairment," the
        Commissioner must ask whether, based solely on
        medical evidence, claimant has an impairment listed
        in Appendix 1 of the regulations.  If the claimant has
        one of these enumerated impairments, the
        Commissioner will automatically consider him
        disabled, without considering vocational factors such
        as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5.    If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

*Shaw v. Chater*, 221 F.3d at 132, *citing DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1986); *see* 20 C.F.R. § 404.1520 (1999).

## III.    Analysis

The Commissioner argues that the ALJ's determination that plaintiff is not disabled is supported by substantial evidence and should be affirmed.  Dkt. #10, pp.13, 16-17.

Plaintiff responds that the ALJ committed reversible error by failing to consider and apply listing 12.05C.  Dkt. #12, p.4.

The Commissioner responds that plaintiff's impairments did not meet listing 12.05C.  Dkt. #14, pp.2-6.  Specifically, the Commissioner notes that plaintiff presented no evidence to demonstrate an onset prior to age 22.  Dkt. #14, p.4.  Moreover, the Commissioner notes that there is no evidence to suggest that plaintiff is unable to perform simple, repetitive work on a sustained basis.   Dkt. #14, pp.5-6.

In order to be found disabled based on mental retardation under Section 12.05 of the Listing of Impairments, plaintiff must prove: (1) that she satisfies the definition provided for in the introductory paragraph of Section 12.05; and (2) that she satisfies the criteria listed in subsection A, B, C, or D.  *See Antonetti v. Barnhart*, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005), *citing* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 Mental Disorders, at 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.").  The introductory paragraph of Section 12.05 states that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 Mental Disorders, at 12.05.  The American Psychiatric Association's *Diagnostic & Statistical Manual of Mental Disorders* states that adaptive functioning refers to how well an individual copes with common life demands and meets standards of personal independence.  *Devoe v. Barnhart,* No. 05cv746, 2006 WL 1272614, at *3 n.5 (D. Conn. March 15, 2006).

Subsection C of Listing 12.05 sets forth the following criteria:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 Mental Disorders, at 12.05C.  "The regulations provide that where more than one IQ score has been provided from the

tests administered – *i.e.*, where verbal, performance, and full-scale IQs are provided – the lowest of the scores should be used in conjunction with Listing 12.05." *Devoe*, 2006 WL 1272614, at *7, *citing* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, 12.00 (D).

With respect to the second prong of subsection C, this District has determined that "the ALJ should use the 'severity test' employed by the First, Eighth, and Tenth Circuits, as well as several district courts in this Circuit." *Antonetti*, 399 F. Supp.2d at 203 (collecting cases). "The so-called 'severity test' requires that the ALJ find that plaintiff suffer from another impairment that, when viewed without regard to [her] low IQ, would be considered 'severe' as that term is defined at step two of the Commissioner's five-step sequential disability evaluation." *Id.* The Court of Appeals for the Second Circuit has "held that the step-two severity test is not a difficult standard to meet, and is intended merely to weed out *de minimis* claims." *Id., citing Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

In the instant case, plaintiff's performance IQ and full scale IQ both fall within the parameters of 12.05C. T198. However, there was no discussion of 12.05C in the ALJ's decision, despite counsel's argument at the administrative hearing that plaintiff met this listing. T22. As a result, remand is required. *See Devoe*, 2006 WL 1272614, at *7 ) ("Because the record does not indicate whether the ALJ specifically considered whether Plaintiff's mental impairment met the requirements of Listing 12.05C, the court cannot determine whether his decision is supported by substantial evidence and, therefore, recommends remanding this matter."); *Antonetti*, 399 F.

-13-

Supp.2d at 201 (remand required where "the ALJ gave no explanation whatsoever as to why the criteria for 12.05B or 12.05C were not met.").

While the Commissioner argues that plaintiff failed to submit sufficient evidence to support a finding of onset prior to age 22, the Court notes that "[a]bsent any evidence of a change in plaintiff's intellectual functioning, it is appropriate to assume that plaintiff's IQ has not changed since h[er] twenty-second birthday." *Vasquez-Ortiz v. Apfel*, 48 F. Supp.2d 250, 257 (W.D.N.Y. 1999).  Moreover, to the extent that the record is deficient in this respect, it is clear that "an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel."  *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *see Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996).  Although plaintiff's school records are likely unavailable, records from the Clarkson Center, where plaintiff allegedly completed data entry training, could prove relevant, as could a retrospective diagnosis regarding the initial manifestation of any deficits in plaintiff's adaptive functioning.

Should the ALJ determine that plaintiff meets the diagnostic description in the introductory paragraph of listing 12.05C, the ALJ must determine whether plaintiff's physical impairments, when considered independently of her intellectual capacity, constitute severe impairments as that term is defined at step two of the Commissioner's five-step sequential disability evaluation. *See Devoe*, 2006 WL 1272614, at *7 (remanding for determination as to whether physical limitations would meet the severity test).  The Court notes that the ALJ's assessment of plaintiff's residual functional

-14-

capacity to work does not comport with the legal standard applicable to claims pursuant to listing 12.05C. *See Keitt v. Barnhart*, No. 04-CV-1347, 2005 WL 1258918, at *4-5 (E.D.N.Y. May 27, 2005) (remanding for application of severity test where ALJ erroneously assessed plaintiff's ability to work in light of her past work history and ability to carry out activities of daily living).

## CONCLUSION

Based on the foregoing, the Commissioner's motion (Dkt. #9), is **DENIED** and this action is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order, pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**SO ORDERED.**

DATED:     Buffalo, New York
           January 22, 2007

                                   **S/ H. Kenneth Schroeder, Jr.**
                                   **H. KENNETH SCHROEDER, JR.**
                                   **United States Magistrate Judge**